PATRICIA FOILES, Plaintiff-Appellant, v. NORTH GREENE UNIT
DISTRICT No. 3, Defendant-Appellee.

Fourth District    No. 4—93—0806

Argued February 23, 1994.—Opinion filed April 7, 1994.

Charles E. Theivagt (argued), of Gustine & Theivagt, Ltd., of Carrollton,
for appellant.

David M. Smith (argued), of Springfield, for appellee.

JUSTICE LUND delivered the opinion of the court:
Plaintiff Patricia Foiles appeals from an August 12, 1993,
judgment of the circuit court of Greene County holding for defendant
North Greene Unit District No. 3 (District). Plaintiff's cause of action
related to her employment as a school bus driver for the District.

Plaintiff was hired as a full-time school bus driver for the 1983-84
school year. Her route was (and has been for all relevant times) for
early childhood students. The route required morning, noon, and eve-
ning transportation. The early childhood classification did not include
kindergarten students. Defendant paid an additional stipend if a bus
driver had noontime kindergarten passengers. For the 1983-84 school
year, plaintiff had two kindergarten students and received additional

income of approximately $1,700 because of the stipend. The crux of her claim is the failure of the District to pay the stipend, even though she did not transport kindergarten children, for the 1984-85, 1985-86, and 1986-87 school years. Plaintiff claims when she was hired for 1984-85 she was told she would be employed under the same agreement as 1983-84. The bus superintendent testified he did not set salaries and did not represent the 1984-85 compensation to be the same as in 1983-84.

In essence, plaintiff's claim is based upon an implication that contracts existed for 1984-85, 1985-86, and 1986-87, similar to the 1983-84 contract.

Evidence establishes that plaintiff first made objection to the bus superintendent after her second monthly check in 1984-85. She was told by the bus superintendent that the reduction in compensation resulted from the deletion of kindergarten children from her route. To no avail, plaintiff made objection to the District's administration and school board. The written judgment by the trial court contained the following statement:

> "Obviously plaintiff did not agree with the defendant's practice of compensating bus drivers by category of students[,] but she was informed from the beginning of the [19]84-85 school year of the reasoning behind the cessation of the kindergarten stipend. Evidence at trial proved that the plaintiff had no written contract with the school district for the three years in question. The evidence is not sufficient to prove that Mr. Stewart, the bus supervisor, had authority to extend the plaintiff's first year compensation into subsequent years. Not only did Mr. Stewart not have the authority[,] he testified that he did not tell the plaintiff that her compensation would remain at the first year level. There being no oral or written agreement that plaintiff's first year compensation would be extended into the subsequent years[,] the court finds that the plaintiff was an employee 'at will'. As plaintiff was an employee at will[,] the defendant was not required to pay the same salary each year. Plaintiff's salary could be modified.
> Judgment for the defendant."

Plaintiff contends plaintiff's 1983-84 employment contract was for a fixed duration and, as a result, plaintiff was not an employee at will. She also contends the bus superintendent had apparent authority to negotiate terms of compensation and, in doing so, bound the District. She further contends plaintiff's employment was renewed by defendant for the 1984-85 school year without any agreement to renegotiate compensation and, thus, was impliedly renewed in accordance with the 1983-84 terms of compensation.

Defendant argues application of the Frauds Act (Act) (Ill. Rev.

Stat. 1991, ch. 59, par. 1), and that the employee-at-will determination was correct and, hence, plaintiff's compensation was at all times subject to the will of defendant, and by continuing to work, plaintiff assented to the paid wage.

## FRAUDS ACT

Evidence supports the trial court's determination that no written contract existed between plaintiff and defendant for any of the years from the summer of 1983 through the 1986-87 school year. Section 1 of the Act provides in relevant part:

"That no action shall be brought *** upon any agreement that is not to be performed within the space of one year from the making thereof, unless the promise or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized." Ill. Rev. Stat. 1991, ch. 59, par. 1.

Plaintiff's first full-time employment was for 1983-84 and covered a time period of less than one year. Evidence of an oral contractual agreement would not be limited by the Act; however, it would limit an action trying to establish a contractual agreement which would cover two or more school years. Plaintiff does not argue the existence of such an extended contract. She does appear to argue that there were implied contracts for 1984-85, 1985-86, and 1986-87, which contained stipend provisions similar to that of 1983-84. As to 1984-85, plaintiff contends that in the summer of 1984, when told she was hired for the next year, she assumed her compensation would include the same stipend as paid in 1983-84. However, there is no evidence that compensation was discussed when the bus superintendent, Stewart, told plaintiff she would have the same route, less kindergarten students, for 1984-85.

## EMPLOYMENT AT WILL

"Nearly all courts agree on the general rule, that an employment relationship without a fixed duration is terminable at will by either party." *Duldulao v. Saint Mary of Nazareth Hospital Center* (1987), 115 Ill. 2d 482, 489, 505 N.E.2d 314, 317.

"An employment relationship can under some circumstances be terminable at will. It has also been stated generally that employment is held only by mutual consent, and that at common law the right of the employer to terminate the employment is unconditional and absolute.
***
Although the right to discharge an employee depends on the

nature of the employment and the terms of the contract, as a general rule, an employer has the power to discharge an employee, even though the discharge constitutes a breach of the contract of employment." 30 C.J.S. *Employer-Employee Relationship* § 35, at 67 (1992).

"Where a contract of employment is for a definite term, it may not be terminated at an earlier period, except for cause by mutual agreement, *** unless the right to do so is reserved in the contract ***." 30 C.J.S. *Employer-Employee Relationship* § 38, at 69 (1992).

"A contract of employment for a definite period terminates by its own terms at the end of such period. Where the continuation of employment after the expiration of the original employment period is for an indefinite period, or without any fixed limitation as to time, it may be terminated at will by either party." 30 C.J.S. *Employer-Employee Relationship* § 39, at 69-70 (1992).

"In the absence of a statute to the contrary, an employment for an indefinite term may be terminated at the will of either party, regardless of the length of service, for or without cause, and without giving any reason or explanation therefor *** unless such termination is limited by contract ***. This rule applies even to an officer or shareholder employee." 30 C.J.S. *Employer-Employee Relationship* § 40(a), at 70-71 (1992).

"An employment contract is for an indefinite term and terminable at will notwithstanding the contract of employment provides for payment at a daily, weekly, monthly, or yearly rate, or for salary increases at specific times. A contract for employment 'not to exceed' a specified period is for an indefinite term. Where a contract for a definite term is barred by the statute against frauds, the employment is for an indefinite term. A term limited by a condition is not an indefinite term." 30 C.J.S. *Employer-Employee Relationship* § 40(b), at 73 (1992).

The 1983-84 contract terminated at the end of the 1983-84 school term. There is no evidence indicating the first contract provided a right to a subsequent-year contract. At the end of 1983-84, the District was at will to offer or refuse plaintiff a new contract.

Evidence establishes that plaintiff was told she had the same amount of driving for year 1984-85 by the bus superintendent, but without discussion of compensation. Kindergarten children were not transported by plaintiff in 1984-85.

We conclude that the District could set different compensation for 1984-85 if so desired. The question remains whether notification of employment for 1984-85 was sufficient to sustain an implied contract equivalent to that of the prior year.

## IMPLIED CONTRACT

A contract implied in fact is one whereby a contractual duty is imposed by reason of a promissory expression which may be inferred from the facts and circumstances and the expressions on the part of the promisor. (*Arthur Rubloff & Co. v. Drovers National Bank* (1980), 80 Ill. App. 3d 867, 873, 400 N.E.2d 614, 619.) An implied contract arises where the intention of the parties is not expressed, but an agreement in fact creating an obligation is implied or presumed from their acts; in other words, where circumstances under common understanding show a mutual intent to contract. A contract implied in fact must contain all elements of an express contract, and there must be a meeting of the minds. 17 C.J.S. *Contracts* § 4(b) (1963).

As to 1985-86 and 1986-87, no possible implied contract including the stipend can be implied. Soon after plaintiff's second monthly payment in 1984-85, she was informed of the District's refusal to pay the stipend because of an absence of kindergarten children. Plaintiff could in no way be justified in believing the District, in offering the 1985-86 and 1986-87 oral contracts, intended to include the stipend. Both of those contracts were offered at the will of the District.

As to the 1984-85 contract, evidence establishes that the District's policy existing before, during, and after 1983-84 provided a stipend when bus drivers also drove kindergarten children. Those driving early childhood students, even though they drove morning, noon, and evening, were considered equal with those who drove grade school and high school students only in the morning and evening. Irregardless of an extra shift at noon, the early childhood routes are usually shorter, with fewer passengers, and vans may be used rather than buses.

We conclude that evidence fails to establish the mutuality of minds on the issue of the stipend for 1984-85. Without that mutuality, an implied contract, including the stipend for 1984-85, cannot exist. Because the 1983-84 contract expired by its own terms, no carryover of the stipend can be based upon that earlier contract.

Affirmed.

McCULLOUGH, P.J., and KNECHT, J., concur.